Brady BERRY, Personal Representative
of the Estate of Ronald Dean
Berry, Appellant,

v.

ST. PAUL FIRE & MARINE
INSURANCE COMPANY,
Appellee.

No. 95–1863.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 13, 1995.

Decided Nov. 28, 1995.

Rehearing and Suggestion for Rehearing
En Banc Denied Jan. 23, 1996.

Robert W. Hill, Springfield, Missouri, argued (Robert W. Stillings, on the brief), for appellant.

Jeffrey J. Bouslog, St. Paul, Minnesota, argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, BRIGHT and FAGG, Circuit Judges.

RICHARD S. ARNOLD, Chief Judge.

The question is whether a certain claim, arising out of the death of Ronald Berry of silicosis, is covered by an insurance policy issued by St. Paul Fire & Marine Insurance Company. Berry, who has since died, was awarded a $4,500,000 judgment in a Missouri state court against Empire Abrasive Equipment Corporation, which manufactured a sand-blaster that Berry had used. His personal representative, Brady Berry, is now attempting to enforce the judgment against St. Paul, one of Empire's insurers.

The St. Paul policy is a "claims-made" policy. It covers only claims made or brought during the policy period. The policy at issue in this case became effective on July 8, 1988. St. Paul takes the position that the policy does not cover Empire's liability for Berry's claim because the claim was made before July 8. The District Court,[1] acting on St. Paul's motion for summary judgment, agreed, and so do we.

After Berry recovered his judgment against Empire, he filed a garnishment suit against Hartford Accident & Indemnity Co. and St. Paul, two of Empire's insurers. (Berry had previously settled with two other Empire insurers, Liberty Mutual Insurance

1. The Hon. Russell G. Clark, United States Dis trict Judge for the Western District of Missouri.

Co. and Evanston Insurance Co. As part of the settlement, Brady agreed to enforce his judgment against Empire by proceeding only against St. Paul and Hartford.) St. Paul argues that its policy does not cover the claim because the claim was first made by Berry's lawyer in a letter dated July 1, 1988, received by Empire on July 6, 1988. It is undisputed that the St. Paul policy covers only claims first made or brought "on the earliest of the following dates: the date that we [St. Paul] or any protected person receives a written claim or a notice of suit; or the date that we receive notice of an event from any protected person." Protected persons include Empire, the insured under the policy. The issue turns, then, on the proper characterization of the letter received by Empire on July 6. If this letter was a "claim," as that term is used in St. Paul's policy, the claim was received before the effective date of the policy, and it is not covered by the policy. "Claim" is defined as a "demand in which damages are alleged."

In order to place the issue in proper context, we set out in full the text of the letter that St. Paul argues was a "claim."

July 1, 1988

Empire Abrasive Equipment Corp.

2101 W. Cabot Blvd.

Langhorne, PA 19047

Re: Products Liability Claim of Ronald D. Berry Sandblaster Model No. P350

Dear Empire Abrasive Equipment Corp.

This office represents Ronald D. Berry for personal injuries and disability he sustained while using one of your products during a period of employment in Springfield, Missouri. The particular product in question is a "sandblasting" unit, including a hopper, hose and gun, and carries the label of Model No. P350. As a result of his use of this product, Mr. Berry has sustained severe and permanent disability to his lungs and pulmonary body parts.

Our representation of Mr. Berry is upon a contingency fee contract and our attorney's lien is hereby asserted. All communications and correspondence on this matter should be directed to this office.

Please forward this letter to your products liability insurance carrier for proper handling so we may discuss this situation prior to the commencement of products liability litigation.

/s/ Sincerely yours,
/s/ Bob Hill
Robert W. Stillings

We think this letter, fairly read, clearly qualifies as a "claim." In the first place, the letter itself refers to the "Products Liability Claim of Ronald D. Berry." It states that Berry sustained personal injuries and disability, that these injuries and disability are the result of the use of an Empire product, and that the letter should be forwarded to Empire's insurance company so that "the situation" can be discussed before suit is filed. The letter does not state damages of a particular dollar amount, but it does say that "Mr. Berry has sustained severe and permanent disability," and the inference that Mr. Berry's injuries and disability should be compensated in money is unmistakable. The letter is telling Empire that Mr. Berry has a claim, that the claim is Empire's responsibility, and that the claim should be referred to Empire's insurance company. Further, the reference to an attorney's lien presupposes the existence of a claim, because it is a claim to which the lien attaches under state law.

It is argued, in opposition to this conclusion, that the letter was not a claim or demand, but merely a communication of a present legal right. On this view, no claim would occur until Mr. Berry affirmatively brought suit or made a specific demand for payment. We think the argument is strained. True, the letter does not request payment of a specific dollar amount, but sometimes complaints in actions actually filed in Court don't either, so this omission does not seem inconsistent with the letter's being treated as a "claim." Treating the letter as other than a claim, it seems to us, requires a tortured construction of its text. In our view, anyone receiving this letter would know that Mr. Berry was claiming that he was owed money.

The plaintiff relies heavily on *Bensalem Township v. Western World Ins. Co.*, 609 F.Supp. 1343 (E.D.Pa.1985), also a case involving the question whether a certain letter

was a "claim" within the meaning of a claims-made insurance policy. An employee of Bensalem Township, Pennsylvania, filed an age-discrimination charge with the Equal Employment Opportunity Commission against the Township. On September 24, 1981, before the effective date of the policy, the Township received a letter from the EEOC notifying it that a discrimination charge had been filed. A copy of the charge was attached to the letter. The purpose of the letter was "to notify [a] prospective defendant and try to eliminate any alleged unlawful practice by informal conciliation, conference, and persuasion." *Id.* at 1345. The letter concluded by stating that an Equal Opportunity Specialist would be in touch with the Township "to review the circumstance involved in this case and, if possible, to work out some solution consistent with the statute and agreeable to the parties." *Ibid.*

The Court held that this letter was not a "claim," and that, therefore, coverage was not excluded on the ground that a claim had been made before the beginning of the policy period. The Court reasoned, among other things, that the letter did not request monetary or other relief and did not state that a lawsuit would follow.

The letter involved in *Bensalem* seems to us different in relevant ways from the letter sent to Empire in the present case. The letter did not come from the claimant, but rather from the EEOC. The letter is considerably less pointed than the letter in the record before us. The letter received by St. Paul refers in a much more definite way to the possibility of future litigation. It treats the "commencement of products liability litigation" as a certainty unless the situation can be resolved beforehand. Such a resolution, we think, could only be the payment of money damages sufficient to compensate Mr. Berry for the severe and permanent disability he claims Empire caused. Claims of discrimination are often settled or concluded by the payment of money, but, especially at the EEOC level, there can be other, less formal, types of resolution, for example, some sort of conciliation agreement in which the employer agrees to modify its policies prospectively.

The differences between the two letters, to be sure, are differences of degree. Some of the language in the *Bensalem* opinion supports the position taken by the plaintiff in this case. On the whole, however, and after considering the full text of both letters in context, we conclude that the letter sent by Mr. Berry's lawyer to Empire in this case is sufficiently demanding in tone and substance to qualify as a "claim" within the meaning of the policy in suit. The *Bensalem* opinion, in any event, is not binding authority in this Circuit.

Accordingly, the judgment of the District Court, holding that St. Paul's policy does not cover Empire's liability to Mr. Berry, because the Berry claim was made before St. Paul's policy went into effect, is

Affirmed.