# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1711

_____

Estate of Horst G. Blume;               *
Headache & Pain Control Center, P.C.,    *
                                         *
            Appellees,                   *
                                         *
      v.                                 *   Appeal from the United States
                                         *   District Court for the
Marian Health Center, successor-         *   Northern District of Iowa.
in-interest Mercy Medical Center,        *
                                         *
            Appellant.                   *

_____

Submitted: December 13, 2007
Filed: February 19, 2008

_____

Before BYE, ARNOLD, and MELLOY, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Dr. Horst Blume and his professional corporation sued Marian Health Center after it permanently revoked his staff privileges. Dr. Blume's complaint raised a number of theories for relief, but the only one that survives is his claim that the hospital breached its contract with him when it terminated his privileges without giving him a hearing. The district court held as a matter of law that Marian had breached its contract, and, after a trial on the matter of damages, a jury returned a verdict in Dr. Blume's favor. This appeal followed and we reverse.

We note that Dr. Blume died during the pendency of this case, and his estate was substituted as a party. Also, Marian Health Center was succeeded in interest by Mercy Medical Center. But these changes do not affect the issues on appeal and for the sake of simplicity we will refer to the plaintiffs-appellees collectively as "Dr. Blume" and to the defendant-appellee as "the hospital."

The hospital asserts first that under Iowa law the bylaws in question did not constitute a contract between the hospital and Dr. Blume. But since both parties agreed in the trial court that the bylaws did create a contract between them, the hospital has conceded the point and thus has waived the right to raise it on appeal. *See Shanklin v. Fitzgerald*, 397 F.3d 596, 602 (8th Cir. 2005), *cert. denied*, 546 U.S. 1066 (2005).

Even if we were to conclude that the point of law was not waived but merely acquiesced in or forfeited in the trial court, we would not give relief because there is no plain error here. It is true that there are two Iowa cases that refuse, in the particular circumstances in those cases, to give hospital staff bylaws the effect of a contract between the hospital and its staff. *See Natale v. Sisters of Mercy of Council Bluffs*, 243 Iowa 582, 591-95, 52 N.W.2d 701, 707-09 (1952); *Tredrea v. Anesthesia & Analgesia, P.C.*, 584 N.W.2d 276, 284-87 (Iowa 1998). In the latter case, however, the Supreme Court of Iowa shrank from laying down a hard-and-fast rule on the matter, *id.* at 285-87, and remarked upon the differences between the case before it and *Islami v. Covenant Med. Ctr., Inc.*, 822 F. Supp. 1361, 1370-71 (N.D. Iowa 1992), where a federal district court, applying Iowa law, held that the staff bylaws in that case had created a contract, *see Tredrea*, 584 N.W.2d at 286-87. We do not give relief based on forfeited claims of error unless the error is obvious and resulted in a manifest injustice. *See United States Fire Ins. Co. v. Kresser Motor Serv., Inc.*, 26 F.3d 91, 95 (8th Cir. 1994). Given the subtlety of the Iowa law on the subject and the detailed character of the bylaws in question here, treating the bylaws as a contract in the present circumstances was neither an obvious error nor manifestly unjust.

The hospital raised numerous defenses to this action in the trial court, including an assertion that it was immune from suit under the hospital's bylaws, under Iowa Code § 147.135(1), and under the Health Care Quality Improvement Act, *see* 42 U.S.C. § 11112(a). The district court rejected the hospital's motion for summary judgment on these immunity defenses. After careful consideration, we conclude that it was error to hold that the hospital's bylaws did not entitle the hospital to immunity from the present suit.

Dr. Blume maintains that the hospital has waived a defense based on the bylaws' immunity clause because the district court did not rule on that defense below – despite the hospital's motion for summary judgment on that basis – and it was the hospital's responsibility to ensure that the court made a ruling. But the district court did in fact make a ruling: It rejected the hospital's motion for summary judgment on immunity grounds, explicitly adverting to the hospital's argument relying on the immunity provision in the bylaws. Even if the district court had not ruled on the hospital's motion, the court twice entered orders foreclosing any proof at trial on the matter of immunity and effectively granted summary judgment against the hospital on the issue. The matter is therefore squarely before us.

Nor is there any merit in Dr. Blume's contention that the issue of the effect of the immunity provision was not preserved because the hospital did not raise that issue in its post-trial motion for judgment as a matter of law, *see* Fed. R. Civ. P. 50, though it raised its other immunity defenses in that motion. But the "interpretation of a contract is a question of law for the court to decide," and a party has no obligation to raise a legal issue post-trial in order to preserve it for appeal. *White Consol. Industries, Inc. v. McGill Mfg. Co.*, 165 F.3d 1185, 1190 (8th Cir. 1999). The fact that the hospital did raise some issues after trial does nothing to undermine that general proposition in our mind. In fact, a post-trial motion would have been inappropriate because under Rule 50, only a party that "has been fully heard on an issue during a jury trial" may seek judgment as a matter of law. *See* Fed. R. Civ. P. 50(a)(1). Here

the district court, not a jury, rejected the hospital's reliance on the immunity provision in the bylaws when it twice held that the only issue that remained for trial was the matter of damages.

We therefore turn to the merits of the hospital's argument. Dr. Blume's claim was bottomed on the rather complex bylaws provisions governing a staff member's right to a hearing, and the kind of hearing to which a staff member would be entitled, before the hospital could revoke a staff member's privileges. But Section IX of the bylaws themselves provides that "[t]he practitioner extends absolute immunity to ... the hospital ... for any actions ... taken ... by this hospital ... relating [to] ... proceedings for suspension ... of clinical privileges or for ... revocation of appointment, or for any other disciplinary action." The breadth of the immunity afforded is evident, and it is equally evident that the contract language covers the present claim because the claim is based on actions that the hospital took to suspend Dr. Blume's clinical privileges. Indeed, Dr. Blume does not argue otherwise.

As Dr. Blume also recognizes, we have held that a very similar immunity provision contained in hospital bylaws was enforceable against a staff physician under North Dakota law. *See Everett v. St. Ansgar Hosp.*, 974 F.2d 77, 80 (8th Cir. 1992). We see no material distinction between the provision at issue here and the one in *Everett* or any indication that the Iowa courts would adopt a different rule regarding the efficacy of such a provision. Dr. Blume points out that the immunity clause in *Everett* applied only if the acts complained of were "performed or made in good faith and without malice." *Id.* But the principle applied in that case, namely that waivers ought to be given effect, was not limited to the particular language of the waiver involved there.

There is nothing in Iowa law that would forbid the enforcement of this clause as written. Dr. Blume maintains, relying on *Islami* 822 F. Supp. at 1374, that the immunity provision is invalid because Iowa law requires that a hospital staff member

-4-

be afforded certain due process rights before his or her privileges can be revoked. Assuming for present purposes that *Islami* correctly divined and applied Iowa law, Dr. Blume nevertheless misconceives the context and the holding in that case. That case, like this one, involved a claim that procedural rights outlined in hospital bylaws had been ignored, and the district court simply held that a jury question had been made out as to whether the procedure had been, as the bylaws required, "fair ... under the circumstances." *Id.* at 1371-74. There was no hint there that the claim was based on any statutory or common-law entitlement to due process: The claim was purely contractual.

We emphasize that the rights that Dr. Blume claims are only contractual. If the due process rights that he claimed arose from an Iowa statute, then he would have a good or at least colorable argument that they could not be waived or that the immunity clause was invalid. That is because in *Breton v. Ames Community Sch. Dist.*, 291 N.W.2d 351, 351, 356-57 (Iowa 1980), the Supreme Court of Iowa invalidated a provision in a teacher's contract stating that the contract could be terminated without notice or a hearing, a provision that directly contradicted a state statute requiring school districts to follow specific procedures before terminating a teacher's contract. The court concluded that the statute did not merely establish a default rule that the school board could contract out of: The statute instead established a "legislatively declared public policy of promoting fairness and thoughtful decisionmaking" by school boards. *Id.* at 356. But there is no Iowa statute governing the due process rights of a hospital's staff members and therefore no legislative public policy that weighs in here against the immunity provision in the hospital's bylaws.

Some state courts have held that staff physicians have certain common-law due process rights whether or not those rights are set out in a contract with a hospital. *See*, *e.g.*, *Applebaum v. Board of Directors*, 104 Cal. App. 3d 648, 656-57, 163 Cal. Rptr. 831, 836 (1980). But there are cases to the contrary. *See*, *e.g* *Pepple v. Parkview Mem. Hosp., Inc.*, 536 N.E.2d 274, 276 (Ind.1989). Even if the Iowa courts were to

recognize such a common-law right, moreover, there is nothing in the Iowa case law that would indicate that a promise not to enforce it by way of action would be invalid. A party seeking to avoid an agreement when no inconsistent statute exists carries a heavy burden. The Iowa Supreme Court "proceed[s] cautiously and will invalidate a contract on public policy grounds 'only in cases free from doubt.' " *Walker v. Gribble*, 689 N.W.2d 104, 110-11 (Iowa 2004) (quoting *DeVetter v. Principal Mut. Life Ins. Co.*, 516 N.W.2d 792, 794 (Iowa 1994)). There is nothing in the present record to indicate that an Iowa court would conclude that the immunity provision was undoubtably contrary to public policy. Besides, Dr. Blume makes no argument that he has a common-law right to due process.

At oral argument, Dr. Blume's counsel asserted that to allow the immunity clause to trump the promises of due process in the bylaws would render his arrangement with the hospital nugatory. But the meaning of the clause is plain and we have no warrant to ignore it. The promises still create a moral obligation on the part of the hospital, moreover, and may create a scruple against their violation; Dr. Blume just does not have an action if the hospital violates them. It is a nice question whether the clause renders the promises illusory, but if it does it means that they cannot serve as consideration and thus that Dr. Blume would simply have no contract to sue on. *See* 3 Williston on Contracts § 7:7 (4th ed.).

For the reasons indicated, we vacate the judgment of the district court and remand for the entry of a judgment for the hospital.

———————————————————

-6-