# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2076

_____

| | | |
|---|---|---|
| Owatonna Clinic – Mayo Health System, | * | |
| | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United |
| | * | States District Court for |
| The Medical Protective Company of Fort Wayne, Indiana, | * | the District of Minnesota. |
| | * | |
| Appellant. | * | |
| -------------------------------------------- | * | |
| American Medical Association; Minnesota Hospital Association; Minnesota Medical Association, | * | |
| | * | |
| | * | |
| | * | |
| Amici on Behalf of Appellee. | * | |

_____

Submitted: December 14, 2010
Filed: May 11, 2011

_____

Before LOKEN, ARNOLD, and BYE, Circuit Judges.

_____

ARNOLD, Circuit Judge.

This is a contracts case. Owatonna Clinic – Mayo Health System sued its insurer, Medical Protective Company, claiming that the company had breached its

obligation to defend and indemnify the Clinic in a medical malpractice suit that had resulted in a judgment against it. Medical Protective denied that it had any such duty because the Clinic had failed to give proper notice of a potential claim against it. After cross-motions for summary judgment, the district court[1] held that the notice the Clinic provided was sufficient as a matter of law. The court also noted, though, that the policy required that, when giving notice, the Clinic "reasonably believe allegations of liability may result" from an incident, and the court decided that this requirement involved two questions: one was whether the Clinic's belief, if any, was objectively reasonable, the other was whether the Clinic actually believed that it was at risk. The court ultimately held that there was a triable issue on the latter question only, held a trial on that question, and put the matter specially to a jury. After the jury returned a verdict for the Clinic on the question, the district court entered judgment for it in the amount of the policy limits and awarded the Clinic pre-judgment interest on that amount.

On appeal, Medical Protective maintains that the district court erred in ruling as a matter of law that the Clinic's notice conformed to the policy requirements and that the Clinic's belief that it was at risk was objectively reasonable. It also asserts that the Clinic was not entitled to pre-judgment interest. We affirm.

I.

There is a preliminary question to answer. The Clinic asserts that we do not have jurisdiction to decide the correctness of the district court's rulings on summary judgment because Medical Protective made no motion for judgment as a matter of law with respect to those rulings under Fed. R. Civ. P. 50. It argues that Medical Protective is appealing from an order denying its motion for summary judgment, and correctly points out that, absent exceptional circumstances not present here, we do not

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

-2-

have jurisdiction over such an appeal because the order is only interlocutory, not final, *see* 28 U.S.C. § 1291. And the Clinic contends that, even if the denial of a summary judgment order was appealable, the time for appeal would have long past. *See* Fed. R. App. P. 4(a)(1)(A); *see also* 28 U.S.C. 2107(a); *Ortiz*, 131 S. Ct. at 891. But Medical Protective says that it is instead appealing from the final judgment against it and wishes to assign error in certain legal rulings that the district court made in the course of summary judgment proceedings. We have jurisdiction to decide legal issues raised in a trial unless they have been waived or are not properly preserved, and there is no suggestion of actual waiver here. So, strictly speaking, our question is not one of jurisdiction but one of preservation – that is, whether Medical Protective had to make motions for judgment as a matter of law under Rule 50 before we can notice the legal errors that it wishes to raise.

As the parties point out, our cases related to this general question may not be in harmony. In *Metropolitan Life Ins. Co. v. Golden Triangle*, 121 F.3d 351, 353-56 (8th Cir. 1997), we rejected outright the proposition that a denial of a summary judgment motion was appealable after final judgment if the denial was based on a legal question rather than on the existence of material facts in issue. But just two years later, we adopted the principle that when " 'the denial of summary judgment is based on the interpretation of a purely legal question, such a decision is appealable after final judgment.' " *White Consol. Indus., Inc. v. McGill Mfg. Co.*, 165 F.3d 1185, 1190 (8th Cir. 1999) (quoting *Wolfgang v. Mid-America*, 111 F.3d 1515, 1521 (10th Cir. 1997)). We later affirmed our allegiance to and applied this proposition in *Estate of Blume v. Marian Health Ctr.*, 516 F.3d 705, 707-08 (8th Cir. 2008), and we adverted to it approvingly in *Hertz v. Woodbury County, Iowa*, 566 F.3d 775, 780 (8th Cir. 2009). This very issue was recently raised in *Ortiz*, 131 S. Ct. at 892-93, but the Court decided that it need not address it.

We think that it is unnecessary to resolve this apparent conflict in our cases, if that is possible, or decide which of them state the correct rule, because Medical

Protective's real complaint is not that the district court erred in denying its motion for summary judgment. In this case, Medical Protective did not get a trial on the issues that it wishes to raise on appeal because the district court, though it did not say so directly in its order, effectively granted partial summary judgment to the Clinic on them: The court allowed a trial only on the issue of whether the Clinic actually believed that it was at risk of allegations of liability, and the jury rendered a special verdict on that matter alone. So the pertinent issue here is whether the district court erred in granting summary judgment, not denying it. A simple reference to Rule 50(a)(1) solves the question at hand. The rule provides that a motion for judgment as a matter of law should be granted "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a sufficient evidentiary basis to find for the party on that issue." Rule 50 therefore has no application.

Medical Protective calls our attention to a recent case of ours, *Studnicka v. Pinheiro*, 618 F.3d 799 (8th Cir. 2010), but we don't think that case requires a contrary result. In fact, it fits comfortably with the conclusion we reach here. *Studnicka* was a suit against a doctor for a common-law assault and battery, and the defense was that the plaintiff had consented to the surgical procedure at issue. When the plaintiff moved for summary judgment on the ground that the law required written consent before the surgery could be performed, the district court denied the motion and proceeded to a trial in which the matter of consent was fully developed. Following a defendant's verdict, the plaintiff asserted on appeal that the absence of written consent required judgment for him as a matter of law. *Id.* at 800-01.

We quite rightly rejected the appeal because there had been a trial on the issue of consent and the plaintiff had failed to press his legal point by raising it in a Rule 50 motion. *Id.* at 801-02. In other words, the matter at issue, the consent of the plaintiff, had been subject to a full airing at trial, and if a writing were required for consent as a matter of law, there would, in the words of Rule 50, have been no "legally sufficient

evidentiary basis to find" for the defendant because there was no such written consent in evidence. *See id.* at 801. In those circumstances, the need for a Rule 50 motion is thoroughly obvious. In our case, by contrast, the only issue on which there was a trial was the matter of the Clinic's subjective belief, as to which there was no doubt as to the sufficiency of the evidence, and as to which, more relevantly, there is no issue raised on appeal. Simply put, unlike *Studnicka*, the issues raised here were not "fully heard ... during a jury trial" and so a Rule 50 motion was not necessary to preserve them. Fed. R. Civ. P. 50(a)(1). This case is no different in relevant respects from ones in which a defendant's liability is established by summary judgment and a trial is held solely on the matter of damages.

## II.

We proceed therefore to the merits of Medical Protective's contentions. The policy involved in this case is a so-called "claims-made" policy, that is, it covered only claims submitted during the policy period. *See In re Silicone Implant Ins. Coverage Lit.*, 667 N.W.2d 405, 409 (Minn. 2003). Under the policy, the Clinic was "deemed" to have filed a timely claim if, during the policy period, it gave Medical Protective "written notice of a medical incident from which the [Clinic] reasonably believes allegations of liability may result." The policy also requires that before it can "be deemed a claim, notice of a medical incident shall include all reasonably obtainable information with respect to the time, place and circumstances of the professional services from which liability may result and the nature and extent of the injury including the names and addresses of the injured and of available witnesses."

The writing on which the Clinic relies as providing appropriate notice was a letter that it sent to Medical Protective enclosing a Notice of Conference from the Minnesota Board of Medical Practice; the Notice informed Dr. Charles Chambers, a Clinic employee, that he was under investigation for his care of five patients. The Notice told Dr. Chambers that the Board wanted to discuss matters related to his "ability to practice medicine and surgery with reasonable skill and safety." As

relevant here, the Notice asserted that a "patient #5" who was about to deliver a baby had undergone an ultrasound, that Dr. Chambers had missed a diaphragmatic lesion when reading it, and that the baby had been born with persistent respiratory distress and a diaphragmatic hernia; it also stated that the Board's medical consultant believed that Dr. Chambers's diagnosis and treatment had constituted a "deviation from acceptable OB ultrasound standards of care."

The parties are on common ground that the Notice did not literally comply with the policy requirements: Though Medical Protective received the Notice before the policy expired, it did not include any names and addresses or detailed particulars of the injuries. But because Medical Protective had insured Dr. Chambers against medical malpractice, it provided counsel to defend him before the Board, and he and the lawyers whom Medical Protective retained to defend him learned the name of the patient and had reviewed her medical records months before the policy expired. The Notice, moreover, identified the time, place, and circumstances of the services Dr. Chambers rendered, along with an account of the injuries to the baby that were evident at the time. Medical Protective thus had knowledge of all relevant particulars or could gather them to hand without any difficulty from Dr. Chambers or from his counsel.

Medical Protective insists that since this was a claims-made policy, notice must be given in strict accordance with its provisions because only then could the company accurately fix its potential liabilities and thus its premiums on a solid actuarial basis. That, it rightly points out, is a chief purpose of a claims-made policy. Medical Protective relies on cases like *Esmailzadeh v. Johnson & Speakman*, 869 F.2d 422, 424-25 (8th Cir. 1989), that hold that the temporal requirements of notice provisions in claims-made policies must be punctiliously observed. But, as the district court noted, this case involves a question of the content of the notice, not the timing; and because this is a diversity case we must look to the decisions of the Minnesota courts to decide the matter.

-6-

Although the Supreme Court of Minnesota does not seem to have addressed the precise issue, decisions of intermediate appellate courts are persuasive authority "when they are the best evidence of what state law is," *Minnesota Supply Co. v. Raymond Corp.*, 472 F.3d 524, 534 (8th Cir. 2006). We believe that *St. Paul Fire & Marine Ins. Co. v. Metropolitan Urology*, 537 N.W.2d 297, 298-300 (Minn. Ct. App. 1995), effectively forecloses Medical Protective's argument. There, in a case involving a claims-made policy, *id.* at 298, the court specifically held that as long as the "notice clearly gave an insurer sufficient information to conclude that the insured had presented a claim for arguable coverage," the insurer had a duty to make a reasonable investigation of the situation and provide coverage if the policy covered the conduct discovered, *id.* at 300 (internal quotation marks and citation omitted).

Medical Protective argues that the Minnesota Court of Appeals erred in *Metropolitan Urology* because it misinterpreted the two cases that it relied on to reach its decision, and so the Minnesota Supreme Court would not follow it. But, contrary to what Medical Protective says, one of those cases, *St. Paul Fire & Marine v. Tinney*, 920 F.2d 861, 861-62 (11th Cir. 1991), did indeed turn on the interpretation of a claims-made policy. And, as for the other case, *Federal Sav. & Loan Ins. Corp. v. Burdette*, 718 F. Supp. 649 (E.D. Tenn. 1989), the Minnesota Court of Appeals quite accurately characterized it as holding that the notice given in that case under a claims-made policy was adequate and that if an insurer considered the notice inadequate it had certain duties of inquiry. *See id.* at 651-52, 653-54; *Metropolitan Urology*, 537 N.W. 2d at 300. Though *Burdette* might not have been precisely on point, it certainly did not, as Medical Protective insists, conclude that the notice given the insurer was defective. The court held that letters to the insurer provided adequate notice of the events that the letters referred to; it denied coverage only as to events that the letters did not mention. *See Burdette*, 718 F. Supp. at 654.

We thus discern no internal infirmity in the reasoning in *Metropolitan Urology* and so see no impediment to the Supreme Court of Minnesota accepting it. It is

certainly not contrary to any Minnesota precedent that we have discovered, and is in keeping with general Minnesota jurisprudence that rejects technical and narrow objections to the existence of coverage, especially when it comes to matters of notice. *See*, *e.g.*, *Nathe Bros., Inc. v. American Nat'l Fire Ins. Co.*, 615 N.W.2d 341 (Minn. 2000); *Reliance Ins. Co. v. St. Paul Ins. Cos.*, 307 Minn. 338, 341-43, 239 N.W.2d 922, 924 25 (1976).

As the district court observed, requiring strict compliance with provisions in claims-made policies that set deadlines for making claims makes sense because insurers can then make plans and fix premiums based on a sounder actuarial footing than would be possible if there were unknown, percolating claims that might be pressed after the policy period ran. Besides, specific time-limit provisions do not lend themselves to the application of a relaxed interpretive standard because they set out bright, discriminating lines. But we don't think that the same considerations are in play when the substantive adequacy of the notice is in issue. In that kind of case, we conclude that the law of Minnesota places a burden of inquiry on the insurer when it has notice of facts that would raise a likelihood of a claim, and we are satisfied that this case falls within the ambit of that principle.

Medical Protective also maintains that the Notice of Conference that the Clinic sent it was not intended to call attention to a possible claim against the Clinic but was intended simply to request Medical Protective to defend Dr. Chambers in the proceeding before the Board of Medical Practice. But the purpose of the notice provision in the policy is to provide an insurer with a description of an incident that would alert it that its insured might well be liable for damages, whatever the insured's purpose was in revealing the incident to the insurer. And here, as we have said, the information that Medical Protective received would obviously alert a reasonable insurer to the likelihood of possible allegations of liability on the Clinic's part.

-8-

`                                    III.

Medical protective also challenges the district court's holding that the Clinic's belief, if any, that "allegations of liability may result" from the incident at issue was objectively reasonable as a matter of law. This contention is meritless because the quoted policy language sets an exceedingly low bar. Properly construed, it requires only that a reasonable insured would believe that someone might allege that it was liable, not that someone will in fact do so or that someone would have any appreciable prospect of recovery.

The situation that the Clinic faced easily clears that hurdle. The State Board of Medical Practice had informed Dr. Chambers, a Clinic employee, that he was under investigation for care he had provided and that the Board wanted to discuss his professional competence and fitness to practice. His skill was called into doubt as was his ability to perform surgery safely and treat his patients properly. The Board's notice maintained that Dr. Chambers's patient had suffered an injury and, most damaging of all, revealed that the Board's own medical consultant had concluded that Dr. Chambers's performance was below acceptable professional standards. These allegations would set off alarms in the minds of any reasonable person charged with risk management at the Clinic and would certainly alert a reasonable mind to the possibility that someone might claim that the Clinic was liable for the patient's injuries. This is all the policy requires.

                                    IV.

Medical Protective maintains finally that the district court erred in awarding prejudgment interest against it under Minn. Stat. § 60A.0811, subd. 2(a). That statute provides, with exceptions not relevant here, that an insured who prevails against an insurance carrier on "any claim" for an insurer's breach of a duty under an insurance policy "is entitled to recover ten percent per annum on monetary amounts due under the insurance policy." *Id.* Despite the plain language of the statute, Medical Protective insists that it cannot be made to pay more than the policy limits. It directs

our attention to Minn. Stat. § 72A.201, subd. 12, which specifically states that when a judgment is entered against an insured, the insurer must pay "their insured's share of" the prejudgment interest on that judgment even if the total judgment exceeds the policy limits, and points to the omission of any similar statement in § 60A.0811. It argues that the absence of specific language concerning the payment of prejudgment interest in addition to the policy limits is fatal to the Clinic's claim here. But it is hard to see how this omission could defeat the plain language of § 60A.0811: As the district court pointed out, the phrase "any claim" by an insured against its insurer necessarily includes a claim for the policy's limits and the word "on" rather obviously supports a conclusion that interest is in addition to the amount due under the policy. Here, that amount was the policy limit.

Since there is no Minnesota precedent directly on point, we must do our best to predict how the Minnesota Supreme Court would resolve the issue. *See Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 876 (8th Cir. 2000). But we think that the statute is unambiguous and that the Minnesota Supreme Court would think so, too; and it may well be that precedent is absent because the answer to the question presented here is so manifest that it has generated no serious dispute. It is true that in *Lessard v. Milwaukee Ins. Co.*, 514 N.W.2d 556, 559 (Minn. 1994), the Minnesota Supreme Court held that prejudgment interest was not available against an insurer to the extent that, when added to the total damages award, it would exceed the policy limit. But that case involved the application of Minn. Stat. § 549.09, which contains strictures not present in § 60A.0811, subd. 2; the latter statute was enacted only recently and after *Lessard* was decided. Minn. Sess. Laws 2009, ch. 148, § 1 (effective. Aug. 1, 2009).

In a further effort to avoid prejudgment interest, Medical Protective points out that the policy provides that Medical Protective's indemnity obligation is "subject to the limits of liability ... of this policy." But even if this provision, construed as Medical Protective urges, could lawfully trump the statutory duty to pay prejudgment

interest that § 60A.0811, subd. 2, creates, we reject the proposed interpretation; we believe that the policy language refers to Medical Protective's principal indemnity obligation and not to the duty to compensate for a failure to honor that obligation before suit was filed.  At best, the provision is ambiguous on the point and we must therefore construe it against the insurer.  *See General Cas. Co. of Wisconsin v. Wozniak Travel, Inc.*, 762 N.W.2d 572, 575 (Minn. 2009).

Affirmed.

_____