# United States Court of Appeals
### For the Eighth Circuit

_____

No. 14-3392

_____

Ritrama, Inc.

*Plaintiff - Appellant*

v.

HDI-Gerling America Insurance Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: June 10, 2015
Filed: August 11, 2015

_____

Before LOKEN, BYE, and KELLY, Circuit Judges.

_____

BYE, Circuit Judge.

Ritrama, Inc. ("Ritrama") appeals the district court's[1] decision that Ritrama's general liability insurer, HDI-Gerling America Insurance Co. ("Gerling"), does not have a duty to defend Ritrama in a defective-product action filed against it by

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

Burlington Graphics Systems ("Burlington"). Ritrama argues the district court erred in interpreting the term "claim" in the governing insurance policy and in finding sufficient evidence that a claim was made against Ritrama prior to the effective date of the claims-made policy. We affirm.

I

Ritrama manufactures pressure-sensitive flexible films and cast vinyl films for various applications, including for vehicle graphics products. Over a number of years, Burlington—Ritrama's former customer—purchased more than $8 million worth of cast vinyl film products from Ritrama to manufacture graphic decals for customers in the recreational vehicle ("RV") industry.

No later than early 2008, Burlington reported to Ritrama that RV owners were experiencing issues with the graphics. In one of its early emails, Burlington informed Ritrama that it was "not going to let [quality issues] just pass by" and that if Ritrama failed to take corrective action, it would seek an alternate supplier.[2] The parties then engaged in discussions about how to solve the issues and how to allocate payment for the sustained losses. On July 8, 2008, Patrick McCormack, a manager for Ritrama, met with Burlington's President, Mark Edwards, to discuss the product failures. McCormack sent an email memorializing the action plan agreed to at the meeting:

---

[2]Ritrama asserts this specific email was in reference to a product failure issue not the subject of this litigation and should not have been considered by the district court. Accepting that assertion as true, the email is still from Burlington to the President of Ritrama during the same time period of the issues that are the subject of this litigation. As such, regardless of the specific complaint the email referenced, it is relevant evidence regarding the context of Burlington's subsequent communications with Ritrama, the status of the parties' relationship, and Burlington's tolerance and refusal to accept, in general, product failure issues.

Mark [Edwards] will be meeting with Keystone [(one of Burlington's customers who reported failures)] next Thursday or Friday to update them on the 530 [vinyl] and where we [(Ritrama)] are going with the claims. Mark indicates that Keystone is taking a clean-cut approach of "moving on." Ritrama will discuss the Keystone claim on Monday during conference call. [Burlington] intends to establish an agreement of an hourly charge for re-work with Keystone. Mark will be compiling a summary of the re-work claims submitted to them since April of 2007. Mark has requested that Ritrama provide information as to what they will need to review all material pertaining to the claim (lot#, PO# etc . . .).

On September 9, 2008, Burlington sent Ritrama a spreadsheet detailing three claims for monetary damages based on the product failures, which totaled $53,219.37. McCormack responded to the spreadsheet by explaining that his "group went over the claim summary and [he] left Mark [Edwards] a voicemail with some questions," which included: "What is [Burlington's] expectation of Ritrama on this claim? Is there a certain percentage split you have in mind? When we settle on what the split will be, will this be it? Our intention is to close this out with [Burlington] and have nothing else waiting in the balance (so-to-say)."

In October, Ritrama again communicated with Burlington regarding the amount necessary to reach a settlement:

I know we have been playing a bit of phone tag over the past two weeks. Our group discussed the original $53k claim that was submitted to me. . . . I also need to know a bit more on [Burlington's] expectation as to how much Ritrama should share in this claim. We are concerned about these claims growing further on the $$$ side of things.

On October 10, 2008, Ritrama's Technical Director, Bill Stalker, forwarded Ritrama's settlement proposal to Burlington:

Burlington is receiving claims from Keystone for defective graphics. Included in these claims are[:] material costs, removal costs, cleaning cost, application cost, etc. To date Burlington has communicated this claim value to be $53,219.37.

In light of the above, we [Ritrama] would like to offer a reasonable settlement proposal of 50% of the $53,219.37, or an immediate credit issued to Burlington in the amount of $26,609.69. When this credit is issued, Ritrama will consider this claim closed.

In early 2009, Ritrama purchased a commercial general liability insurance policy from Gerling (the "Policy").[3] The Policy provided coverage only for claims made between March 31, 2009, and March 31, 2010. As relevant to this appeal, the policy included the following terms:

A claim by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

(1) When notice of such claim is received and recorded by any insured or by us, whichever comes first; . . .

All claims for damages because of "property damage" causing loss to the same person or organization will be deemed to have been made at the time the first of those claims is made against any insured.

Although the Policy defined the term "suit," it did not define the term "claim." Under the Policy, Gerling not only provided coverage for damages but also had a duty to defend Ritrama in any suits against it.[4]

---

[3]Ritrama later purchased a similar policy with coverage to March 31, 2011.

[4]There is no dispute that the type of damages Ritrama suffered fall within the scope of the Policy—the only dispute on appeal is whether Burlington submitted a claim to Ritrama prior to March 31, 2009.

On July 17, 2009, Ritrama advised its insurance agent of its issues with Burlington. The same day, the insurance agent sent a "notice of occurrence" to Gerling. Ritrama argues that the notice was not an acknowledgment of a claim, but merely a notification of a "customer having problems." On January 6, 2011, Burlington sent a letter through its litigation counsel to Ritrama more formally demanding payment and threatening litigation. After Ritrama failed to meet Burlington's demands, on April 21, 2011, Burlington brought suit against Ritrama in federal court. On June 14, 2011, Gerling denied coverage and refused to defend Ritrama in its liability suit. Ritrama then filed the present suit on January 14, 2013, claiming that Gerling breached its duty to defend under the Policy.

In the present insurance-coverage suit, Gerling moved for summary judgment, arguing that Burlington made a "claim" within the meaning of the Policy prior to March 31, 2009. The district court agreed and granted summary judgment in favor of Gerling:

> In short, the record establishes that Burlington demanded money as early as 2008, that the demand increased to more than $110,000 by February 2009, and that prior to inception of the Policy, Ritrama attempted to settle both existing and future claims for damages based on the RV adhesive issues. Although these communications did not involve an attorney or make express reference to litigation, Burlington clearly demanded compensation for harm allegedly caused by Ritrama's faulty adhesive. Further, the record establishes that Ritrama purchased the policy *after* the claim was made. As a result, the claim regarding Ritrama's allegedly defective adhesive product as used for RV decals is not covered by the Policy.

Ritrama, Inc. v. HDI-Gerling Am. Ins. Co., No. 13-128 (DWF/HB), 2014 WL 4829088, at *7 (D. Minn. Sept. 29, 2014).

-5-

## II

Ritrama raises three issues on appeal: the district court erred in (1) adopting too broad a definition of "claim" for the Policy; (2) finding the term unambiguous; and (3) granting summary judgment in favor of Gerling because whether Burlington made a claim under the Policy was a disputed factual issue.[5]

We review a district court's interpretation of an insurance policy and its decision to grant summary judgment *de novo*. PETCO Animal Supplies Stores, Inc. v. Ins. Co. of N. Am., 724 F.3d 1025, 1026 (8th Cir. 2013).

## A

The insurance policy here does not define the term "claim," so we employ ordinary contract interpretation principles to determine the meaning the parties ascribed to the term. Because the case is before us under diversity jurisdiction, we look to Minnesota law for principles of contract interpretation. See Nat'l Union Fire Ins. Co. of Pittsburgh v. Terra Indus., Inc., 346 F.3d 1160, 1164 (8th Cir. 2003). Under Minnesota contract law, "[u]nambiguous words [are] given their plain, ordinary, and popular meaning." Gen. Cas. Co. of Wis. v. Wozniak Travel, Inc., 762 N.W.2d 572, 575 (Minn. 2009) (internal quotation marks omitted). If the words are ambiguous, however, they are to be "construed against the insurer according to the reasonable expectations of the insured." Id. (internal quotation marks omitted).

---

[5]Ritrama also makes a cursory argument that a claim was not made because the claim was not "recorded" by Ritrama's Risk Manager. However, Ritrama conflates the Policy provisions regarding when a claim is considered to have been first made with when Ritrama has an obligation to give notice of a claim to Gerling. There is no dispute that Ritrama recorded the submission of Burlington's demands, as evidenced by Ritrama's President's explicit acknowledgment: "Our group discussed the original $53k claim that was submitted to me."

The district court found the term unambiguous with the following definition: "an assertion by a third party that the insured may be liable to it for damages within the risks covered by the Policy." Ritrama, 2014 WL 4829088, at *6. Ritrama also believes the term is unambiguous but asserts the following interpretation: "a written, legal demand for monetary relief, within which is an express or implicit threat to sue." Alternatively, it argues that if the interpretation adopted by the district court is also reasonable, then the policy is ambiguous and should be construed against Gerling. Ritrama offers five arguments for why the district court's definition is an unreasonable interpretation of the term: it is (1) inconsistent with dictionary definitions; (2) inconsistent with the insurance policy as a whole; (3) contrary to the primary purpose of claims-made insurance policies; (4) contrary to Minnesota and Eighth Circuit law; and (5) an interpretation that leads to absurd results. We find all these arguments unpersuasive.

First, the definition adopted by the district court is entirely consistent with dictionary definitions, including Black's Law Dictionary, cited by Ritrama. Ritrama improperly clings onto the first listed definition of a claim—"facts giving rise to a right enforceable by a court"—but this plainly refers to the use of the word as a right of action in a dispute, which is not relevant in this context. The other two listed definitions—"[t]he assertion of an existing right" and "[a] demand for money or property to which one asserts a right"—are much more on point and consistent with the district court's definition.

Second, the district court's definition is also consistent with the Policy as a whole. Ritrama believes the term "claim" should carry a similar meaning to "suit" because the terms are used "side-by-side," but the Policy specifically defines the term "suit" and does not define the term "claim"—suggesting they carry different meanings within the Policy. See City of Mankato v. League of Minn. Cities Ins. Trust, No. C8-93-1090, 1993 WL 527886, at *1 (Minn. Ct. App. Dec. 21, 1993) ("The term 'claim' is not defined in the policy. Yet, the policy, by distinguishing between a claim

-7-

and a suit, indicates that action short of a lawsuit can constitute a claim."). Ritrama also argues that adopting the district court's definition would render meaningless some of the other provisions in the insurance policy, citing to Gerling's ability to settle or investigate any claim or suit and the insured's obligation to send copies of written materials accompanying the claim. However, there is nothing inconsistent about the fact that an insurer may wish to become involved early in the process of a claim—prior to actual suit—or that a "claim," as defined by the district court, may include accompanying notices or demands. See id. (rejecting the same arguments).

Third, the district court's definition is not contrary to the primary purpose of claims-made insurance policies. A "claims-made" insurance policy covers only "claims submitted during the policy period." Owatonna Clinic-Mayo Health Sys. v. Med. Protective Co. of Fort Wayne, Ind., 639 F.3d 806, 811 (8th Cir. 2011). Under such a policy, "coverage is provided if the error or omission is discovered and *brought to the insurer's attention* during the term of the policy." Esmailzadeh v. Johnson and Speakman, 869 F.2d 422, 424 (8th Cir. 1989) (emphasis added). A chief purpose of claims-made policies is to allow the insurer to "accurately fix its potential liabilities." Owatonna Clinic, 639 F.3d at 811. Adopting the district court's definition in no way undermines this purpose. To the contrary, it reaffirms the purpose of such policies by recognizing that, absent policy language to the contrary, a claim is submitted when a demand has been made or when the claim is "brought to the insurer's attention"—not when an unnecessarily formalistic procedure for making a claim has been followed. As such, an insured cannot take advantage of such a policy when it receives a clear demand for relief and then purchases a claims-made insurance policy before a third-party can put the stamp on its written demand letter from its attorney. This is consistent with the more general principle that insurance policies are meant to cover risks of future events—not known losses. See, e.g., Waseca Mut. Ins. Co. v. Noska, 331 N.W.2d 917, 924 n.6 (Minn. 1983) ("Insurance cannot be issued for a known loss."). Although in a claims-made policy the mere fact that an insured knows of an occurrence that may lead to a liability does not prevent

the insured from purchasing such insurance, once a claim has been made, a party cannot purchase a claims-made policy to cover a previously made claim. Cf. Wooddale Builders, Inc. v. Md. Cas. Co., 722 N.W.2d 283, 293 (Minn. 2006).

Fourth, we do not believe the district court's definition is inconsistent with Eighth Circuit and Minnesota law. We have previously explained that although the term "claim" does not "necessarily incorporate[] any request for assistance" it "is at least as reasonably interpreted as referring to the filing of a formal lawsuit as an informal complaint." St. Paul Fire & Marine Ins. Co. v. Mo. United Sch. Ins. Council, 98 F.3d 343, 346 n.4 (8th Cir. 1996). This Court and Minnesota courts have likewise made clear that the focus of whether a claim has been made is whether a demand for relief has been made. See, e.g., City of Mankato, 1993 WL 527886, at *2 ("Other jurisdictions have also noted that a claim does not exist until there has been a demand for relief."); Chartis Specialty Ins. Co. v. Restoration Contractors, Inc., No. 10-1160 (ADM/FLN), 2010 WL 3842372, at *1 (D. Minn. Sept. 27, 2010) (noting that the policy defined "claim" as a "demand . . . seeking a remedy"); Berry v. St. Paul Fire & Marine Ins. Co., 70 F.3d 981, 982 (8th Cir. 1995) (noting that claim was defined as a "demand in which damages are alleged"); Phila. Consol. Holding Corp. v. LSI-Lowery Sys., Inc., 775 F.3d 1072, 1078 (8th Cir. 2015) (noting that both policies defined "claim" as a demand for relief in the form of money or services).

Our review of the law indicates that a mere request for information is generally insufficient to constitute a claim, whereas a demand for relief generally constitutes a claim. Several courts and leading treatises have expressly adopted definitions of a claim very similar to the district court in this case. See, e.g., Int'l Ins. Co. v. RSR Corp., 426 F.3d 281, 290 (5th Cir. 2005) (affirming jury instruction defining claim as "an assertion by a third party, that in the opinion of the third party, the insured is liable to it for damages within the risks covered by the policy"); Am. Ins. Co. v. Fairchild Indus., Inc., 56 F.3d 435, 439 (2d Cir. 1995) ("Giving the term its ordinary meaning, a claim is an assertion by a third party that . . . the insured may be liable to

it for damages within the risks covered by the policy."); Couch on Insurance § 191.10 (3d ed. 2000) ("[A] 'claim' is an assertion by a third party that . . . the insured may be liable to it for damages . . . ."); 3 Jeffrey E. Thomas, New Appleman on Insurance Law Library Edition § 16.07[5][b] (2014) (explaining that where the term "claim" is undefined in a claims-made policy, it "has generally been defined as a demand for money or services" and that a "frequently-quoted definition of 'claim'" is "an assertion of a legal right" (internal quotation marks omitted)); 20 Eric Mills Holmes, Holmes' Appleman on Insurance § 130.2 (2d ed. 2002) ("Generally speaking, a 'claim' in a liability policy is considered to be an assertion by a third-party to the effect that the insured has caused the claimant damages through some acts or omissions and that the claimant intends to hold the insured responsible for all or a portion of the damages so caused.").

"[T]erms of an insurance policy are to be given their ordinary meaning, as well as the interpretations adopted in prior cases." Boedigheimer v. Taylor, 178 N.W.2d 610, 613 (Minn. 1970). In light of the uniform case law, we believe that to be considered a "claim" under this policy, the third-party must make some kind of demand or assertion of a legal right. Here, the district court used the word "assertion," which we read to mean something more than just a mere statement of facts already occurred but rather an assertion of a right to relief, i.e., demand for relief.[6] This definition is not only consistent with the case law but also with Black's Law Dictionary, which defines a claim as "[t]he assertion of an existing right."[7]

_____

[6]In its summary judgment order, the district court held that "Burlington clearly *demanded* compensation" (emphasis added) when it sent its spreadsheet to Ritrama, which confirms our understanding of the district court's use of the word assertion. Ritrama, 2014 WL 4829088, at *7.

[7]Ritrama's own president testified that he understood the common industry usage to define a claim as when "a customer *seeks credit* due to product-quality issues" (emphasis added), which is another way of saying a demand for relief.

Finally, we do not believe this definition would lead to absurd results of insureds having to provide notice of even "garden-variety product-quality communications" such as to "transform [an insurer] into a customer-service department for its insureds." Mere complaints of a defective product without a demand for relief would not fall within the general definition of a claim. Thus, we find no error in the district court's interpretation of the term "claim" in the insurance policy.

B

We also find no error in the district court's holding that the term, as used in this policy, is unambiguous.

"An ambiguity exists when a word or phrase in an insurance contract is reasonably subject to more than one interpretation." Mut. Serv. Cas. Ins. Co. v. Wilson Twp., 603 N.W.2d 151, 153 (Minn. Ct. App. 1999). The absence of a definition in an insurance policy does not per se render a term ambiguous. See League of Minn. Cities Ins. Trust v. City of Coon Rapids, 446 N.W.2d 419, 422 (Minn. Ct. App. 1989); see also Hawkeye-Sec. Ins. Co. v. Bunch, 643 F.3d 646, 652 (8th Cir. 2011) ("We are also not persuaded that the lack of a definition of the word 'vehicle' in the uninsured and underinsured motorists sections renders them ambiguous."). "[W]here a term is not defined in an insurance policy but possesses a clear legal or common meaning that may be supplied by a court, the contract is not ambiguous." Genesis Ins. Co. v. City of Council Bluffs, 677 F.3d 806, 815 (8th Cir. 2012) (internal quotation marks omitted). "In deciding whether an ambiguity truly exists, however, a policy must be read as a whole." Mut. Serv., 603 N.W.2d at 153. "The language must be considered within its context, and with common sense." Id. "If a phrase is subject to two interpretations, one reasonable and the other unreasonable in the context of the policy, the reasonable construction will control and no ambiguity exists." Id.

Ritrama advances no reasonable interpretation different from that of the district court. Indeed, Ritrama's proposed interpretation of the term does not differ with the exception of two additional requirements it believes are necessary to constitute a claim: the demand include (1) a writing and (2) "an express or implicit threat to take legal action." However, Ritrama fails to provide any authority imposing either as a requirement in construing the term "claim."[8] In the absence of any authority adopting such a restricted definition of a claim or any evidence of such narrow intended meaning under the Policy, we see no reason why the definition in this policy would require such limitations for a reasonable interpretation of the term. In any event, Burlington's spreadsheet and accompanying email satisfy the written component, so we need not squarely address that specific issue in this case. With these two limitations aside, we find Ritrama's proposed interpretation consistent with the definition adopted by the district court, confirming the term here is unambiguous.

Nor do we find persuasive Ritrama's attempt to frame the term as ambiguous in the abstract merely because it has more than one listed dictionary definition. If this were the standard, virtually every word in every contract would be inherently ambiguous. Ritrama cites a few authorities finding the term "claim" to be ambiguous in different contexts and for different reasons not applicable here. For example, Ritrama principally relies on St. Paul Fire, 98 F.3d at 346, in which the Court found the term ambiguous because the policy, unlike the policy here, did not use both the term "claim" and "suit," such that the term "claim," in that policy, could mean either. But we do not review the term in a vacuum; we consider the term as used in this policy. See Highwoods Props., Inc. v. Exec. Risk Indem., Inc., 407 F.3d 917, 923 (8th Cir. 2005) ("Context is often central to the way in which policy language is applied: the same language may be found both ambiguous and unambiguous as

---

[8]Ritrama cites our decision in Berry. But in Berry, the Court found that a letter from an attorney, even without any specific amount of damages, "clearly qualifie[d] as a 'claim.'" 70 F.3d at 982. In so doing, the Court did not hold such a formalistic letter was required as a minimum to constitute a claim.

-12-

applied to different facts."). Thus, grounds on why other courts may have found the term ambiguous, as used in those policies, are of limited value. Other courts in contexts more similar to this case have found the term to be clear and unambiguous. See, e.g., Musmeci v. Schwegmann Giant Super Markets, Inc., 332 F.3d 339, 352-53 (5th Cir. 2003) ("The [undefined] term 'claim' in the SIR provision, when read in light of these other provisions of the policy, is clear and unambiguous and provides that a 'claim' is the assertion of a legal right against the insured by a third party."); Home Ins. Co. of Ill. v. Spectrum Info. Techs., Inc., 930 F. Supp. 825, 846 (E.D.N.Y 1996) (citing numerous cases from varying jurisdictions and explaining that "[c]ourts have found that the term 'claim' as used in liability insurance policies is unambiguous and generally means a demand by a third party against the insured for money damages or other relief owed").

C

Ritrama argues there was no communication from Burlington which could be considered a claim within the definition above. We disagree. The district court explicitly held that the spreadsheet sent from Burlington to Ritrama in September 2008 constituted "a list of demands for damages in spreadsheet form." Ritrama, 2014 WL 4829088, at *7. Taking all the evidence in the record into account, we do not believe the district court erred.

In early 2008, Burlington notified Ritrama that it would not merely "let [quality issues] just pass by" and threatened to seek an alternative supplier if those issues were not remedied. At the July 2008 meeting in which Burlington and Ritrama met to discuss the product failures and damages that were accruing, Burlington informed Ritrama it would be compiling and submitting a summary of the re-work expenses it had incurred based on the product failures. True to its word, on September 9, 2008, Burlington sent Ritrama a spreadsheet with the specific total of how much monetary damages it had sustained thus far. In the context of the surrounding communications

-13-

and already developed discussions on the issue between the parties, there is no reasonable way to interpret the spreadsheet as anything other than a demand for relief. Indeed, this is precisely how Ritrama itself understood the communication. In response to the spreadsheet, Ritrama acknowledged "the original *$53k claim* that was submitted to [it]," and asked Burlington about its "expectation as to how much Ritrama should share in *this claim*" (emphasis added). A month later, Ritrama reached out to Burlington again with a settlement proposal of 50% for the "*claim value* [of] $53,219.37" communicated thus far and stated that it would "consider *this claim* closed" (emphasis added).

This series of communications confirms Ritrama itself treated the spreadsheet of damages as a claim and demand for payment and aggressively attempted to settle the claim before the damages reached even higher amounts. Ritrama cannot now, in the heart of litigation, contort its prior words into something else. Cf. Cargill, Inc. v. Evanston Ins. Co., 642 N.W.2d 80, 85 (Minn. Ct. App. 2002) (rejecting an attempt to rely on a "technicality of [the] policy language" in order to require a more clear demand). To be sure, determining when a claim is made under a claims-made policy involves "differences of degrees." Berry, 70 F.3d at 983. On the record before us, in the absence of any evidence to suggest why Burlington would send Ritrama a detailed list of damages other than to demand payment, and in light of Ritrama's own repeated acknowledgments that Burlington submitted a claim, we believe the spreadsheet cannot reasonably be understood as anything other than a demand for relief. See Cargill, 642 N.W.2d at 85 (reversing the district court's finding that a letter did not constitute a claim where, read in context, the communications were undeniably a demand for action, even though the communication was "conciliatory" and "did not take the form of demands"); Berry, 70 F.3d at 982 (reasoning that "anyone receiving th[e] letter would know that [it] was claiming [the third party] was owed money"); Chartis Specialty, 2010 WL 3842372, at *4 (finding a letter from a party which "did not expressly demand payment or refer to a specific monetary amount" constituted a claim because its "meaning was clear"); Tucker v. Am. Int'l

-14-

Grp., Inc., No. 3:09-CV-1499 (CSH), 2015 WL 403195, at *12 (D. Conn. Jan. 28, 2015) (finding a letter constituted a claim because by "implication" it demanded payment); Weaver v. Axis Surplus Ins. Co., No. 13-CV-7374 (SJF)(ARL), 2014 WL 5500667, at *8-9 (E.D.N.Y. Oct. 30, 2014) (finding that "claim" was unambiguous and holding that by implication the request constituted a demand).

Accordingly, we do not believe the district court erred in granting summary judgment in favor of Gerling.

III

For these reasons, we affirm.

_____